UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| JOHN PRUITT; JOHN PRUITT, JR., a minor, by and through his Guardian Ad Litem, his custodial parent John Pruitt; PHILLIP PRUITT, a minor, by and through his Guardian Ad Litem, his custodial parent John Pruitt; MICHAEL PRUITT, a minor, by and through his Guardian Ad Litem, his custodial parent John Pruitt; ISAIAH PRUITT, a minor, by and through his Guardian Ad Litem, his custodial parent John Pruitt; and DARRYL BERG, | NO. CIV. 2:10-416 WBS KJN<br><br>MEMORANDUM AND ORDER RE: MOTION TO DISMISS |

            Plaintiffs,

        v.

COUNTY OF SACRAMENTO;
Sacramento County Sheriff's
Department Sheriff JOHN
McGINNESS; Sergeant SANTOS
RAMOS; Detective SEAN BERRY;
Detective BRAD ROSE; Detective
RANDY MOYA; Detective
JACQUELINE KLOSS; Detective
KEVIN STEED; Detective STEVE
WHARTON; Probation Officer
TIMOTHY RUIZ; Deputy THOMAS
LYNN; Deputy CRAIG HARMON; and
DOES 1-100, inclusive,

            Defendants.
_____/

1

1

2          Plaintiffs John Pruitt, John Pruitt, Jr., Phillip

3 Pruitt, Michael Pruitt, Isaiah Pruitt, and Darryl Berg brought

4 this action against defendants County of Sacramento, John

5 McGinness, Santos Ramos, Sean Berry, Brad Rose, Randy Moya,

6 Jacqueline Kloss, Kevin Steed, Steve Wharton, Timothy Ruiz,

7 Thomas Lynn, and Craig Harmon, arising out of a series of events

8 culminating in criminal charges brought and later dismissed

9 against John Pruitt and Darryl Berg.  The Second Amended

10 Complaint ("SAC") alleges various claims pursuant to 42 U.S.C. §

11 1983 for constitutional violations, various <u>Bivens</u>[1] claims, and

12 common law false arrest and false imprisonment.  Defendants now

13 move to dismiss plaintiffs' § 1983 and common law claims for

14 failure to state a claim pursuant to Federal Rule of Civil

15 Procedure 12(b)(6).

16 I.    <u>Factual and Procedural Background</u>

17          The individual defendants are state law enforcement

18 officers who were part of a drug task force in the Sacramento

19 area.  (SAC ¶¶ 1, 31.)  In 2008, the officers set a meeting with

20 a suspected methamphetamine dealer, Leslie Shugart, wherein an

21 undercover officer, Brad Rose, would attempt a controlled

22 purchase.  (<u>Id.</u> ¶¶ 2, 17, 34-41.)  Officer Rose met with Shugart

23 on February 19, 2008.  (<u>Id.</u> ¶ 37.)  During the meeting, Rose wore

24 a bodywire that two other officers monitored.  (<u>Id.</u> ¶ 36.)  The

25 wire was also recorded.  (<u>Id.</u>)  Rose offered to buy

26 methamphetamine from Shugart, who informed him that she needed to

27 ────────────────────

28     [1]    <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971).

1 acquire more drugs in order to complete the transaction.  (Id. ¶

2 37.)  When she left the meeting site, officers followed her and

3 observed her encounter a white Impala, which they followed.  (Id.

4 ¶ 38.)  Rose met Shugart forty minutes after their initial

5 meeting, and Shugart sold him 57.2 grams of methamphetamine.

6 (Id. ¶ 40.)

7            Hours later, officers stopped a white Impala in

8 Rocklin, California.  (Id. ¶ 49.)  John Pruitt and Darryl Berg

9 were the occupants.  (Id.)  The officers asked the men to step

10 out of the car and searched them, searched the vehicle, arrested

11 them, and took them to a nearby police station.  (Id. ¶¶ 50-54.)

12 Both were eventually charged with violating federal drug laws.

13 (Id. ¶ 57.)

14            In the criminal case, Pruitt and Berg filed a motion to

15 suppress the evidence obtained as a result of the search of the

16 Impala, arguing that the officers lacked probable cause to

17 support the warrantless search and seizure.  (Id. ¶ 64; Defs.'

18 Req. for Judicial Notice Ex. A (Docket No. 59).)  Judge Karlton

19 held an evidentiary hearing on the motion, at which the existence

20 of a recording of Rose's bodywire was raised, but several

21 officers denied that such a recording existed.  (SAC ¶¶ 68-74;

22 Defs.' Req. for Judicial Notice Ex. D at 23:19-24:9, 25:7-26:4,

23 34:11-35:4, 66:12-67:19.)  Judge Karlton denied the motion to

24 suppress.  (SAC ¶ 75; Defs.' Req. for Judicial Notice Ex. D at

25 135:3.)

26            Several months after the hearing, the bodywire

27 recording was discovered and produced to the defendants.  (SAC ¶

28 79.)  Pruitt and Berg then moved to dismiss.  (Defs.' Req. for

3

1 Judicial Notice Ex. E.)  Judge Karlton held a hearing on the

2 motion, focused primarily on the bodywire recording, and ended

3 the hearing by ordering the parties to come up with a discovery

4 plan for investigation into the alleged suppression of evidence.

5 (Pls.' Req. for Judicial Notice Ex. B (Docket No. 57) at 8:25-

6 9:11, 13:13-15:7, 16:13-17:20, 20:19-22.)  Soon thereafter, the

7 government moved to dismiss all charges, which Judge Karlton

8 granted.  (SAC ¶¶ 85, 87.)

9           Pruitt, Berg, and Pruitt's children[2] then filed the

10 instant action, complaining that the search, seizure, arrest, and

11 prosecution were unlawful.  In their SAC, plaintiffs bring claims

12 under 42 U.S.C. § 1983 for constitutional violations, various

13 Bivens claims, and common law false arrest and false imprisonment

14 claims.  Presently before the court is defendants' motion to

15 dismiss the SAC pursuant to Federal Rule of Civil Procedure

16 12(b)(6) for failure to state a claim upon which relief can be

17 granted.

18 II.  Discussion

19           On a motion to dismiss, the court must accept the

20 allegations in the complaint as true and draw all reasonable

21 inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

22 U.S. 232, 236 (1974), overruled on other grounds by Davis v.

23 Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

24 (1972).  "To survive a motion to dismiss, a complaint must

25 contain sufficient factual matter, accepted as true, to 'state a

26 ───────────────────

27           [2]   Pruitt's children bring a claim for denial of due
process for separation from their father during his allegedly
28 wrongful incarceration.  (See SAC ¶ 120.)

1 claim to relief that is plausible on its face.'" <u>Ashcroft v.</u>

2 <u>Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Bell</u>

3 <u>Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  This

4 "plausibility standard," however, "asks for more than a sheer

5 possibility that a defendant has acted unlawfully," and where a

6 complaint pleads facts that are "merely consistent with" a

7 defendant's liability, it "stops short of the line between

8 possibility and plausibility."  <u>Iqbal</u>, 129 S. Ct. at 1949

9 (quoting <u>Twombly</u>, 550 U.S. at 556-57) (internal quotation mark

10 omitted).

11        In general, a court may not consider items outside the

12 pleadings upon deciding a motion to dismiss, but may consider

13 items of which it can take judicial notice.  <u>Barron v. Reich</u>, 13

14 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

15 notice of facts "not subject to reasonable dispute" because they

16 are either "(1) generally known within the territorial

17 jurisdiction of the trial court or (2) capable of accurate and

18 ready determination by resort to sources whose accuracy cannot

19 reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

20 may properly be taken of matters of public record outside the

21 pleadings.  <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th

22 Cir. 1986) (taking judicial notice of a motion to dismiss in a

23 separate suit).  This includes proceedings from other cases.

24 See <u>Bennett v. Medtronic, Inc.</u>, 285 F.3d 801, 803 n.2 (9th Cir.

25 2002) ("[W]e may take notice of proceedings in other courts, both

26 within and without the federal judicial system, if those

27 proceedings have a direct relation to matters at issue.")

28 (quoting <u>U.S. ex rel. Robinson Rancheria Citizens Council v.</u>

1  Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992)) (internal

2  quotation marks omitted).  Therefore, the court will grant the

3  parties' requests and take judicial notice of several motions and

4  transcripts from the underlying criminal proceedings.  The court

5  takes judicial notice of the fact of the proceedings and not of

6  any facts contained within the documents.

7         A.    Collateral Estoppel: First, Second, Fourth, Fifth,

8               Sixth, and Fourteenth Claims

9              The doctrine of collateral estoppel prevents the

10 relitigation of an issue previously argued and resolved in a

11 prior proceeding.  Hydranautics v. FilmTec Corp., 204 F.3d 880,

12 885 (9th Cir. 2000).  Federal law controls the collateral

13 estoppel analysis where a federal court has decided the earlier

14 case.  See McQuillion v. Schwarzenegger, 369 F.3d 1091, 1096 (9th

15 Cir. 2004).

16             A prior court decision will have preclusive effect

17 under the doctrine of collateral estoppel where:

18        (1) the issue necessarily decided at the previous
          proceeding is identical to the one which is sought to be
19        relitigated; (2) the first proceeding ended with a final
          judgment on the merits; and (3) the party against whom
20        collateral estoppel is asserted was a party or in privity
          with a party at the first proceeding.
21

22 Hydranautics, 204 F.3d at 885 (quoting Younan v. Caruso, 51 Cal.

23 App. 4th 401, 406-07 (2d Dist. 1996)).  The party asserting

24 collateral estoppel bears the burden of showing what the prior

25 judgment determined.  Hydranautics, 204 F.3d at 885.  "[O]ne

26 general limitation the [Supreme] Court has repeatedly recognized

27 is that the concept of collateral estoppel cannot apply when the

28 party against whom the earlier decision is asserted did not have

1 a 'full and fair opportunity' to litigate that issue in the

2 earlier case."  <u>Allen v. McCurry</u>, 449 U.S. 90, 95 (1980) (citing

3 <u>Mont. v. United States</u>, 440 U.S. 147, 153 (1979); <u>Blonder-Tongue</u>

4 <u>Labs., Inc. v. Univ. of Ill. Found.</u>, 402 U.S. 313, 328-29

5 (1971)).

6         "A 'final judgment' for purposes of collateral estoppel

7 can be any prior adjudication of an issue in another action that

8 is determined to be 'sufficiently firm' to be accorded conclusive

9 effect."  <u>Luben Indus., Inc. v. United States</u>, 707 F.2d 1037,

10 1040 (9th Cir. 1983).  Several factors are relevant to the

11 determination of "firmness":

12     [P]reclusion should be refused if the decision was
       avowedly tentative.  On the other hand, that the parties
13     were fully heard, that the court supported its decision
       with a reasoned opinion, <u>that the decision was subject to</u>
14     <u>appeal or was in fact reviewed on appeal</u>, are factors
       supporting the conclusion that the decision is final for
15     purpose of preclusion.

16 <u>Id.</u> (quoting Restatement (Second) of Judgments § 13 cmt. g

17 (1982)).

18         A denial of a motion to suppress is an interlocutory

19 order that is not appealable by a defendant until conviction.

20 <u>Cogen v. United States</u>, 278 U.S. 221, 227 (1929) (a motion to

21 suppress evidence is "but a step in the criminal case preliminary

22 to the trial thereof"); <u>see</u> <u>Lombardi v. City of El Cajon</u>, 117

23 F.3d 1117, 1121 (9th Cir. 1997) (interlocutory suppression

24 rulings not followed by a conviction or acquittal are without

25 preclusive effect because of lack of finality); <u>People of</u>

26 <u>Territory of Guam v. Mafnas</u>, 721 F.2d 683, 685 (9th Cir. 1983)

27 ("As a general rule, an order by a district court denying or

28 granting a motion to suppress is not an appealable final order

7

1  [conferring appellate jurisdiction]."). Here, the fact that the

2  criminal case was dismissed before a conviction or acquittal and

3  Pruitt and Berg had no opportunity to appeal the probable cause

4  determination from their motion to suppress weighs against a

5  finding that the judgment was final.

6          The tentative nature of the probable cause

7  determination similarly weighs against finality. When the

8  allegedly exculpatory bodywire evidence was presented to Judge

9  Karlton at the hearing on Pruitt and Berg's motion to dismiss,

10 the issue of probable cause was not squarely presented and Judge

11 Karlton did not reverse his prior ruling. However, at the

12 conclusion of that hearing, Judge Karlton ordered the parties to

13 come up with a discovery plan for investigation into the alleged

14 misconduct. (Pls.' Req. for Judicial Notice Ex. B (Docket No.

15 57) at 8:25-9:11, 13:13-15:7, 16:13-17:20, 20:19-22.) This

16 indicates that he intended to revisit the issue, which was left

17 in an extremely tentative position until the government dismissed

18 the charges. Because the probable cause determination was never

19 appealable and was obviously under scrutiny from the deciding

20 judge himself, the decision was not "firm" enough to constitute a

21 final judgment on the merits for purposes of collateral estoppel.

22         In addition, collateral estoppel as to a prior probable

23 cause ruling "does not apply when the decision to hold a

24 defendant to answer was made on the basis of fabricated evidence

25 presented at the preliminary hearing or as the result of other

26 wrongful conduct by state or local officials." Awabdy v. City of

27 Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004); see Zendejas v.

28 Cnty. of L.A., No. CV 09-04858, 2010 WL 4537090, at *3 n.1 (C.D.

1  Cal. Nov. 1, 2010) (following <u>Awabdy</u> and rejecting application of

2  collateral estoppel where the plaintiff alleged that the probable

3  cause finding was induced by wrongdoing).  When a plaintiff has

4  alleged wrongdoing as part of the probable cause determination,

5  that determination cannot be said to be fully and fairly

6  litigated, and thus the determination does not have preclusive

7  effect.  See <u>Awabdy</u>, 368 F.3d at 1068.

8          Here, Judge Karlton's ruling regarding probable cause

9  cannot be given preclusive effect.  Plaintiffs have alleged that

10 defendants lied under oath, manufactured probable cause after the

11 arrest, and hid exculpatory and impeachment evidence.  (<u>See</u> SAC

12 ¶¶ 2, 16-17, 23-24, 42-44, 52, 66, 69-75, 79, 81-82, 94, 99, 109-

13 115, 120, 128-129, 170, 174, 179-180, 182-183.)  Taking these

14 allegations as true, the issue of probable cause was never fully

15 and fairly litigated.

16         Pruitt and Berg never had a full and fair opportunity

17 to litigate the issue of probable cause, which was never subject

18 to a final judgment on the merits.  Thus, since collateral

19 estoppel does not preclude relitigation of the probable cause

20 determination from the criminal case, defendants' motion to

21 dismiss the first, second, fourth, fifth, sixth, and fourteenth

22 claims on the basis of issue preclusion will be denied.

23    B.    <u>Brady Violations: First, Fourth, Fifth, and Sixth</u>

24          <u>Claims</u>

25         The Ninth Circuit recently held that a criminal

26 defendant who is not convicted of the underlying charges brought

27 against him is not entitled to pursue a § 1983 claim for

28 suppression of material or exculpatory evidence in violation of

1  Brady v. Maryland, 373 U.S. 83 (1963).  Smith v. Almada, 623 F.3d

2  1078, 1088 (9th Cir. 2010).  In Smith, the Ninth Circuit affirmed

3  the district court's grant of summary judgment on a Brady claim

4  in favor of a police officer, where the police officer had

5  allegedly withheld exculpatory evidence at a trial that ended in

6  a mistrial.  Id. at 1081-83.  The court reasoned that allowing a

7  Brady-based § 1983 claim absent a conviction would conflict with

8  Brady's central purpose, which was "to ensure a fair trial, a

9  trial whose verdict was reliable[,] . . . 'not punishment of

10 society for misdeeds of a prosecutor . . . .'"  Id. at 1086

11 (quoting Brady, 373 U.S. at 87-88).  In light of that purpose,

12 "regardless of any misconduct by government agents before or

13 during trial, a defendant who is acquitted cannot be said to have

14 been deprived of the right to a fair trial."  Id. (quoting Morgan

15 v. Gertz, 166 F.3d 1307, 1310 (10th Cir. 1999)).  Since Pruitt

16 and Berg were never convicted in the underlying criminal case,

17 any § 1983 claims for suppression of material or exculpatory

18 evidence could not state a plausible claim to relief.

19           Four of plaintiffs' § 1983 claims are premised in part

20 on Brady violations: malicious prosecution and suppression of

21 material exculpatory and impeachment evidence, conspiracy to

22 violate the Fourth, Fifth, and Fourteenth Amendments to the

23 Constitution, denial of due process, and municipal liability for

24 failure to supervise and train adequately.  (See SAC ¶¶ 93-94,

25 110, 112, 120, 128.)  However, since each of these claims

26 contains allegations distinct from the alleged Brady violations,

27 Smith does not require dismissal.

28           Plaintiffs' malicious prosecution claim, in addition to

10

1  alleging <u>Brady</u> violations, contains allegations that defendants

2  testified falsely under oath and manufactured evidence.  (<u>See</u> <u>id.</u>

3  ¶ 94.)  The conspiracy claim alleges that defendants engaged in

4  unlawful searches, seizures, and arrests, manufactured evidence

5  to support probable cause, suborned perjurious testimony, coerced

6  confessions, and engaged in vindictive prosecution.  (<u>See</u> <u>id.</u> ¶¶

7  111-113.)  The municipal liability claim alleges that the County

8  of Sacramento, McGinness, Ramos, and Berry failed to supervise

9  the training of officers, failed to implement adequate policies

10 and programs, maintained a policy and custom of harassment, and

11 condoned harassment.  (<u>See</u> <u>id.</u> ¶ 129.)  The due process claim is

12 brought by Pruitt's children and is derivative of the other

13 claims.  (<u>See</u> <u>id.</u> ¶¶ 118-122.)  Thus, even without the

14 allegations of <u>Brady</u> violations, plaintiffs have stated a

15 plausible claim to relief under § 1983.[3]  The court will not

16 dismiss the claims under <u>Smith</u>.

17       IT IS THEREFORE ORDERED that defendants' motion to

18 dismiss plaintiffs' Second Amended Complaint be, and the same

19 hereby is, DENIED.

20 DATED:  January 20, 2011

21

22 _____

   WILLIAM B. SHUBB

23 UNITED STATES DISTRICT JUDGE

24

25 _____

26      [3]     Indeed, the Ninth Circuit in <u>Smith</u> appears to have
   considered claims for malicious prosecution and false arrest to
27 be independent.  Although the underlying allegations were the
   same, the court discussed those claims without addressing the
28 lack of a conviction.  <u>Smith v. Almada</u>, 623 F.3d 1078, 1083-85
   (9th Cir. 2010).